**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TIMOTHY R. HOUSER, | : |
| Plaintiff, | : |
| v. | : Civ. No. 20-269-CFC |
| CHERICE EVANS, et al., | : |
| Defendants. | : |

---

Timothy R. Houser, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

July 1, 2020
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Timothy R. Houser ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this lawsuit on February 24, 2020. (D.I. 2) He proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. He has also filed a request for counsel. (D.I. 5) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

## II. BACKGROUND

Plaintiff's Complaint alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] The Complaint lists 36 defendants in its caption and alleges violations of Plaintiff's constitutional rights at Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware and at JTVCC. Plaintiff alleges violations of the following rights: "1st Amendment, due process, impartial hearing officer, retaliation, 8th Amendment, deliberate indifference, 14th Amendment, equal protection." (D.I. 2 at 14)

The Complaint contains a chronology of events beginning January 23, 2019 through April 4, 2019, when Plaintiff was housed at HRYCI, continuing from April 4, 2019 through February 28, 2020 when Plaintiff was transferred and housed at JTVCC.[2] (D.I. 2 at 14-15, 20) Plaintiff's allegations concerning the time he was housed at HRYCI refer to deliberate indifference to serious medical/mental health needs; a March 2, 2019 disciplinary write-up for fighting; a March 4, 2019 disciplinary hearing without an

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Plaintiff signed the Complaint on February 24, 2020, but the Complaints states that February 28, 2020 was the last date of occurrence. (D.I. 2 at 14, 32)

impartial hearing officer that resulted in sanctions, and appeal that was not heard and/or fabricated; a new security classification; retaliation; and discrimination. (D.I. 2 at 14-16, 18-21) Plaintiff's claims concerning his transfer to JTVCC on April 4, 2019 include wrongful transfer, failure of prison officials to correct his classification, and retaliation. (*Id.* at 21-29)

Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*Id.* at 17)

## III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Due Process, Classification, and Transfer

Plaintiff's main complaints are the change in his classification and his transfer to JTVCC. As alleged, both occurred following a March 2, 2019 disciplinary write-up for fighting, a finding of guilt by a hearing officer who was not impartial, a five-day sanction in "the hole", and an appeal that was not heard although Plaintiff later states that he was

told the appeal was heard and that correctional officers failed to give him the results and/or the appeal form was fabricated. (D.I. 2 at 15-16, 18)

As a result of the finding of guilt, Plaintiff went from minimum (presumably minimum security status) 6 points to MAX/SHU (presumably maximum security status or security housing unit) 22 points. (*Id.* at 29) On March 15, 2019, Defendant Counselor Cecchini ("Cecchini") informed Plaintiff that she had assessed Plaintiff with 22 points and notified him that he had "MAX/SHU points" but that she was "overriding" Plaintiff to Medium/Key South. (*Id.* at 16, 18) On March 28, 2019, Plaintiff learned that he was denied medium status/Key program and was approved for MAX. (*Id.* at 19) He was transferred to JTVCC on April 4, 2019. (*Id.* at 20)

Plaintiff alleges that Defendant Institution Based Classification Committee/Board ("IBCC") approved the new classification despite the fact that Plaintiff was assessed too many points and the points "were wrong." (*Id.* at 19-20, 21) Plaintiff learned that Defendant mental health worker Logan J. Bolander ("Bolander") did not properly fill out an HRYCI mental health assessment and this may have impacted his classification. (*Id.* at 25) Plaintiff wrote to numerous Defendants in an effort to correct his classification, but the errors were not corrected. (*Id.* at 21-25) On July 1, 2019, Defendant counselor Michael D. DiGangi ("DiGangi") confirmed that Plaintiff should have received less points and told Plaintiff that he would look into it, but Plaintiff did not hear from DiGangi again. (*Id.* at 24-25)

Plaintiff alleges that Defendant counselor Stevens ("Stevens") reviewed the points with Plaintiff and, rather than correct them, sent Plaintiff "back through the boards." (*Id.* at 27) Stevens told Plaintiff that he would have been "more likely to have

19 points overrode to MEDIUM/Key than the 22 pts", but Stevens would not try to assist Plaintiff in that regard. (*Id.*)

The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Connor*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). State-created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Because of the limited duration of time Plaintiff spent in "the hole", he fails to state a constitutional claim on the facts alleged. *See Fantone v. Herbik*, 528 F. App'x 123, 129 (3d Cir. 2013) (finding no procedural due process claim when inmate complained of 35 days in isolation, and the court stating, "we have held that this type confinement does not constitute an "atypical and significant hardship" so as to trigger due process rights."); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (finding inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under *Sandin*); *Griffin v. Vaughn*, 112 F.3d at 706 (finding that fifteen months in segregation was not an atypical and significant hardship); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002)

(stating that seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in [*Sandin*].").

To the extent Plaintiff claims that he did not receive the procedural due process he was due, again he cannot prevail. If "restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law,' "then the prisoner does not have a "protected liberty interest" and the "state owed him no process before placing him in disciplinary confinement." *Mitchell v. Horn*, 318 F.3d at 531; *see also Henderson v. Kerns-Barr*, 313 F. App'x 451, 452 (3d Cir 2008) (assuming that plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights).

According to the allegations, Plaintiff was sanctioned to five days in "the hole", ten days confined to quarters, and loss of all privileges for 30 days. (D.I. 2 at 16) The sanctioned amount of time does not implicate a protected liberty interest. Plaintiff lacks the requisite liberty interest to implicate a due process violation. Therefore, the due process claims will be dismissed as legally frivolous.

To the extent Plaintiff raises a claim based upon his transfer from HRYCI to JTVCC, it is well-settled that a prisoner has no right or legally enforceable expectation to be assigned to, or to remain at, any prison. "Delaware law provides that inmates in the prison system have no protected liberty interest in a particular housing classification or particular housing unit. Moreover, the transfer of prisoners from one housing unit to another falls within the discretion of the discretionary duties of prison officials." *See Desmond v. Phelps*, 36 A.3d 348, 2012 WL 424891, at *1 (Del. Feb. 8, 2012)

(unpublished, table decision); *see also Winter v. Delaware Dep't of Justice*, 210 A.3d 733, 2019 WL 2151659, at *1 (Del. May 15, 2019) (unpublished, table decision) (denying Plaintiff's petition for a writ of mandamus compelling her transfer to a female prison). Nor does Plaintiff have a due process right to be incarcerated at a particular institution such as HRYCI. *See Olim v. Wakinekona*, 461 U.S. 238, 251 (1983) (an inmate does not have a due process right to remain at or be transferred to any prison); *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well established that the decision where to house inmates is at the core of prison administrators' expertise."). To the extent Plaintiff raises an unlawful transfer claim, it will be dismissed as legally frivolous.

Similarly, an inmate does not have a protected liberty interest arising from the Due Process Clause to be assigned to a particular custody level or security classification. *See e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (explaining that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement). Nor do inmates have a constitutionally protected interest in their custodial classification once assigned to a unit, even where the inmate alleges that the classification was erroneous. *See Levi v. Ebbert*, 353 F. App'x 681, 682 (3d Cir. 2009) ("[P]risoners have no constitutional right to a particular classification."); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (a prisoner does not have a basis for a civil rights complaint simply because he disagrees with a classification decision).

Because Plaintiff has no constitutional right or liberty interest in his classification, his classification claim fails. Therefore, the claim will be dismissed as legally frivolous.

**B. Eleventh Amendment Immunity**

The Complaint alleges that HRYCI, JTVCC, Delaware Bureau of Prisons, Delaware Bureau of Healthcare Services, and Connections Community Support Programs Inc. were deliberately indifferent by not having proper policies or by having unwritten practices or polices. (*Id.* at 28) While not clear, it seems Plaintiff is referring to the classification system. HRYCI, JTVCC, Delaware Bureau of Prisons, and Delaware Bureau of Healthcare Services are immune from suit.[3]

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). HRYCI and JTVCC are part of the Delaware Department of Correction. *See* 11 Del. C. § 6501 et seq. As agencies of the State of Delaware, they are immune from suit. *See Jones v. Sussex Corr. Inst.*, 725 F. App'x 157, 159 (3d Cir. 2017). The other Defendants fall under the umbrella of the State of Delaware's agencies and departments.

"Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Jones*, 725 F. App'x at 159-160); *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007). In addition, dismissal is proper because the none of foregoing

[3] Connections Community Support Programs Inc. does not have immunity under the Eleventh Amendment. However, as discussed below, the medical needs claims will be dismissed as frivolous.

Defendants is a person for purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989); *Calhoun v. Young*, 288 F. App'x 47 (3d Cir. 2008).

Accordingly, the foregoing Defendants will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2) based upon their immunity from suit.

### C. Retaliation

Plaintiff asserts retaliation occurred on several occasions. First, Plaintiff alleges that retaliation occurred at HRYCI when Cecchini wrongfully assessed Plaintiff with 22 points following the March 2019 finding of guilt in retaliation for Plaintiff's appeal and letters. (D.I. 2 at 18) Next, he alleges retaliation occurred at HRYCI when his "GTL PIN" was "jacked up" to 90 days when Plaintiff had only 30 days loss of all privileges. (*Id.*) The Complaint does not identify the person who engaged in this alleged retaliatory conduct. Third, Plaintiff alleges retaliation occurred when the classification points were approved by the Warden and his designees and this resulted in Plaintiff's transfer to JTVCC. (*Id.* at 20) And fourth, Plaintiff alleges that retaliation occurred when Defendant Classification Administrator Heidi Collier ("Collier") denied Plaintiff's classification appeal, noting his score of 22 points. (*Id.* at 22) Plaintiff alleges that Collier could not have reviewed his classification because the points were wrong and that she denied the appeal at the direction of HRYCI staff. (*Id.* at 23)

To establish a retaliation claim Plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him. *See Watson v. Rozum*, 834 F.3d 417, 420 (3d Cir. 2016).

Plaintiff's retaliation claims fail because he has not identified any alleged constitutionally protected conduct or alleged that his engagement in a protected activity was a substantial or motivating factor in assessing classification points against him, disciplining him, or transferring him. The only claim that could potentially allege retaliation is that Cecchini wrongfully assessed Plaintiff with 22 classification points in retaliation for appealing and writing letters. (D.I. 2 at 18) However, is it not clear what appeals and letters to which Plaintiff refers. Nor is it clear if the appeals and letters referred to occurred prior to, or after, Plaintiff was assessed 22 classification by Cecchini. Therefore, the Court will dismiss all retaliation claims as legally frivolous and for failure to state claims upon which relief may be granted. Plaintiff will, however, be granted leave to file a retaliation claim against Cecchini.

**D. Equal Protection**

Plaintiff seems to alleges that he was discriminated against because inmate Andrew Harley ("Harley"), a Muslim, received the same write-up and had more points than Plaintiff, who apparently is not a Muslim, and Plaintiff was transferred to JTVCC, but Harley was not. (*Id.* at 20) As alleged, on March 19, 2019, Plaintiff discussed with Defendant Major Fields ("Fields") that he did not have an impartial hearing officer and his appeal of the March 2, 2019 disciplinary write-up (a result of a fight between Plaintiff and Harley) and finding of guilt was not heard. (*Id.* at 15, 19, 28) Plaintiff told Fields that Harley was a Muslim and explained that Caucasians were being bullied by Muslims. (*Id.* at 19) On March 28, 2019, Plaintiff learned that he was denied medium status/Key program and was approved for MAX. (*Id.*)

Plaintiff later found out that the HRYCI warden is Muslim. (*Id.*) Plaintiff is not certain if Fields is also a Muslim. (*Id.*) The Complaint does not state it, but seems to imply the HRYCI Warden's religion played a role in Plaintiff's transfer to JTVCC. However, Plaintiff also alleges that he was transferred because he made the Warden and his designees "mad" because he was the one appealing and writing letters. (*Id.* at 20)

To state an equal protection claim, Plaintiff must allege (1) that he is a protected class member and (2) that he was treated differently from similarly situated persons outside his protected class. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d at 423-24; *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). "Protected classes include those based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights." *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp.2d 581, 589 (W.D. Pa. 2009). "To support a claim for violations of equal protection rights, '[a] plaintiff must at least allege and identify the actual existence of similarly situated persons who have been treated differently and that the government has singled out plaintiff alone for different treatment.'" *See White v. School Dist. of Philadelphia*, 2008 WL 2502137 (E.D. Pa. June 19, 2008), *aff'd*, 326 F. App'x. 102 (3d Cir. 2009) (citations omitted).

The Complaint fails to allege an equal protection claim. On the one hand, Plaintiff alleges that he was transferred because he was appealing and writing letters neither of which has anything to do with Plaintiff's race or religion. On the other hand, he implies, without supporting facts, that he was transferred because he is not a Muslim and complained that Muslims bully Caucasians. The allegations simply do not state an

equal protection claim. Therefore, the equal protection claim will be dismissed. Plaintiff, however, will be given leave to amend the claim.

**E. Medical Needs**

Plaintiff alleges that on January 23, 2019, Defendant Michelle Marcantuno ("Marcantuno") was deliberately indifferent by her "bad attitude" in denying Plaintiff mental health treatment. (D.I. 2 at 14) On February 7, 2019, Plaintiff was sent to medical for an emergency visit. (*Id.*) Plaintiff was examined and treated by Defendant medical provider Mitchell White ("White"). (*Id.*) Plaintiff alleges that White did not take "reasonable measures" when treating him. (*Id.* at 15) Following Plaintiff's transfer to JTVCC, a test in April indicated that Plaintiff was diabetic. (*Id.*) Plaintiff alleges that had White diagnosed the condition and had his mental illness been treated, he would not have been disoriented which was the cause of the March 2, 2019 incident for fighting that resulted in a disciplinary write-up. (*Id.*)

Although "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel and unusual punishment under the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), merely negligent treatment does not give rise to a constitutional violation, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Plaintiff's allegations, though sparse, seem to indicate that he received both mental health and medical care. Because such allegations amount to "mere disagreement as to the proper medical treatment," they are insufficient to state a plausible constitutional violation. *Id.* (quotation marks omitted); *see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth

Amendment claim.") (quotation marks omitted). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

Therefore, the Court will dismiss the medical needs claims for failure to state claims upon which relief may be granted. Plaintiff, however, will be given leave to amend the medical needs claim.

## V. REQUEST FOR COUNSEL

Plaintiff requests counsel on the grounds that he does not have the ability to present his own case; he is not an experienced "jailhouse lawyer"; he suffers from severe mental illness; he is unskilled in the law; the issues are complex, he is unable to pursue an effective investigation; he is not allowed access to other inmates' and staffs' phone, disciplinary, classification, medical, mental health, and/or employment records; the case may turn on credibility determination; expert witnesses will be necessary; he cannot attain and afford counsel on his own behalf; counsel would serve "the best interest of justice"; and his allegations if provide would establish constitutional violations. (D.I. 5)

Because Plaintiff raises the issue of his mental illness, the Court has a responsibility to inquire *sua sponte* under Fed. R. Civ. P. 17(c)(2), whether, as a *pro se* litigant, he is incompetent to litigate this action and, therefore, is entitled to either appointment of a guardian ad litem or other measures to protect his rights. *See Powell v. Symons*, 680 F.3d 301, 303, 307 (3d Cir. 2012). Rule 17(c)(2) provides that "[t]he

court must appoint a guardian ad litem-or issue another appropriate order-to protect a minor or incompetent person who is unrepresented in an action."

Rule 17(c) applies "[i]f a court [is] presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court receive[s] verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Powell*, 680 F.3d at 307 (3d Cir. 2012) (citing *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)). The court "need not inquire *sua sponte* into a *pro se* plaintiff's mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity" but, "if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought into play." *Id.* (citations omitted). The decision whether to appoint a next friend or guardian ad litem rests with the sound discretion of the district court. *Powell*, 680 F.3d at 303.

Here, Plaintiff makes bald allegations of a disabling severe mental illness of bipolar disorder, but has failed to submit any verifiable evidence of incompetence to this court. Thus, in accordance with *Powell*, this court has no duty to conduct a *sua sponte* determination of competency under Rule 17(c)(2).

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155; *see also See*

*Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Several of the *Tabron* factors militate against granting Plaintiff's request for counsel at this time. To date, Plaintiff has ably represented himself and presented his claims. Also, this case is in its early stages, and there is not yet an operative pleading. Accordingly, the Court finds that counsel is not necessary at this time. Therefore, the request will be denied without prejudice to renew. (D.I. 5)

## VI. CONCLUSION

For the above reasons, the Court will: (1) deny without prejudice Plaintiff's request for counsel (D.I. 5); and (2) dismiss the Complaint as legally frivolous, for

failure to state claims upon which relief may be granted, and based upon immunity from suit pursuant 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), and (iii) and 1915A(b)(1) and (2). Plaintiff will be given leave to amend the retaliation claim raised against Defendant Counselor Cecchini, the equal protection claim, and the medical needs claims. Amendment is futile as to all other claims.

      An appropriate order will be entered.